HOLLAND & KNIGHT LLP
Robert J. Labate, Esq. (SBN 313847)
*robert.labate@hklaw.com*
Andrew M. Cummings, Esq. (SBN 305081)
*andrew.cummings@hklaw.com*
Ana Dragojevic, Esq. (SBN 341847)
*ana.dragojevic@hklaw.com*
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

Attorneys for Plaintiff MBL Administrative Agent II LLC

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MBL ADMINISTRATIVE AGENT II LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>MAURICE SALTER, an individual; EMRE UCER, an individual.<br><br>Defendants. | Case No.: 2:25-cv-2211<br><br>**COMPLAINT FOR:**<br><br>**1. FRAUD**<br>**2. CONVERSION**<br>**3. AIDING AND ABETTING FRAUDULENT TRANSFER**<br>**4. CIVIL CONSPIRACY TO COMMIT FRAUD**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff MBL Administrative Agent II LLC , the duly authorized agent of Post Road Specialty Lending Fund II LP (f/k/a Man Bridge Lane Specialty Lending Fund II (US) LP (collectively, "**MBL**"), brings this complaint against defendants, Maurice Salter ("**Salter**") and Emre Ucer ("**Ucer**") for actual and punitive damages on the basis of the following:

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

## NATURE OF THE CASE

1. On August 14, 2024 (the "**Petition Date**"), Chapter 7 bankruptcy petitions were filed by Moto Holding, LLC ("**Moto Holding**"), a Delaware limited liability company, MotoLease Servicing, LLC ("**Moto Servicing**"), a Delaware limited liability company, MotoLease Funding, LLC ("**Moto Funding**"), a Delaware limited liability company, and other entities owned and controlled by Defendants Maurice Salter and Emre Ucer, including Pico Mobility, LLC ("**Pico**"), a Delaware limited liability company, Westwood Group, LLC ("**Westwood**"), a California limited liability company, and M-Nation, LLC ("**M-Nation**"), a Delaware limited liability company (collectively, the "**Debtors**").

2. In this action, MBL is only seeking to recover on claims against Salter and Ucer. MBL is not bringing claims against the Debtors, nor is it seeking to recover the Debtors' assets or assets belonging to the bankruptcy estate.

3. In March 2022, MBL advanced funds for use by MotoLease SPE, LLC ("**Moto SPE**") and its affiliates (collectively, "**Moto Entities**")[1] pursuant to a Credit Agreement, defined below. The total amount currently due and owing to MBL is no less than $16,847,859.61 together with interest, attorneys' fees and costs.

4. To secure its obligations to MBL under the Credit Agreement, Moto SPE executed a Security Agreement, defined below, providing MBL with a first position security interest in over 2,500 consumer leases and loans of motorcycles, ATVs, jet skis, and other recreational vehicles (the "**MBL Portfolio**") together with payments and proceeds resulting from the MBL Portfolio.

5. Pursuant to the Credit and Security Agreements, the Moto Entities were required to process monthly consumer payments automatically processed through an Automatic Clearing House ("**ACH**") and paid directly to the MBL Collection Accounts, defined below ("**Direct Payments**").

[1] As used herein, the term "Moto Entities" refers to the Debtors *except for* Westwood Group, M-Nation, and Pico.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

6. The Credit Agreement also required the Moto Entities to hold in trust payments to the Moto Entities received directly from consumers on their loans (such as credit card payments), as well as all other payments, including from the sale or other disposition of MBL Collateral, insurance payouts on vehicles, early returns of vehicles, and repossessed vehicles sent to auction (collectively "**Manual Payments**"), and to deposit Manual Payments into blocked accounts controlled by MBL within one (1) business day after receipt.

7. The MBL Portfolio, and the proceeds thereof including Direct Payments and Manual Payments, among other assets, were subject to the Security Agreement (the "**MBL Collateral**") and was duly perfected.

8. Defendant Maurice Salter is the Chairman and former CEO of Moto Holding, LLC, which is the parent company of the Moto Entities. Defendant Emre Ucer is the CEO and former COO for the Moto Entities, as well as for Pico, Westwood, and M-Nation, whose operations were merged with those of the other entities comprising the Moto Entities. Together, Salter and Ucer own 77% of the voting interests of Moto Holding, Salter owns 100% of Westwood, and Salter and Ucer jointly own Pico and M-Nation.

9. Contemporaneously with the execution of the Credit and Security Agreements, Salter and Ucer agreed to the appointment of two outside managers for Moto Holding, Neset Pirkul and Andrew Neville (the "**Outside Managers**"), to whom Salter and Ucer were required to provide regular documents and information concerning the operational and financial performance of the Moto Entities.

10. Moreover, because Salter and Ucer owned and controlled 77% of the voting interests in Moto Holding, the Outside Managers had no ability to control or even influence the operations of the Moto Entities.

11. From and after June 2022, Salter and Ucer used their complete control of the Moto Entities to defraud MBL by making numerous false representations to MBL, the Outside Managers, and other third parties, on which MBL and such parties

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

reasonably relied, allowing Salter and Ucer to tortiously convert funds from the MBL Collection Accounts, and to tortiously direct customers to pay Westwood instead of a Collection Account, transfer Direct and Manual Payments other than to Collection Accounts and use such payments to cover the operating expenses of the Moto Entities, Pico, and M-Nation instead of promptly depositing such Payments into the MBL Collection Accounts.

12. As set forth in detail below, in order to conduct and cover up their on-going scheme to defraud MBL, among other materially false and misleading actions and misstatements, Salter and Ucer:

a. falsely executed a Servicing Agreement designating MotoLease Servicing as the sole entity responsible for servicing and receiving payment for MBL Collateral when Ucer and Salter knew that Westwood would be directly collecting, holding and diverting payments from MBL's Collateral, without MBL's knowledge or approval;

b. on August 29 and September 20, 2022, submitted to MBL materially false and misleading Borrowing Base Certificates on behalf of the Moto Entities on which MBL relied and which failed to disclose the improper transfer of funds out of the Blocked Account (defined below), failed to disclose the improper transfer of proceeds of MBL Collateral to the Moto Entities, and falsely stated that all representations, warranties, and conditions precedent set forth in the Credit Agreement were true and correct in all material respects as of the date of such Certificates;

c. falsely represented to East West Bank in June of 2022 that a fake authorization page, created by Salter and Ucer to access restricted Collection Accounts, was a valid and authorized "updated" Deposit Account Control Agreement ("DACA") signature page;

d. falsely represented to the Outside Managers in July and August 2023 that previously undisclosed litigation, in which a creditor accused Moto Holding of diverting at least $1.4 million in borrower funds, had been resolved;

e. falsely provided the Outside Managers with delayed, incomplete, and materially misleading bank statements for only certain affiliates for certain months in 2022 while representing that the information provided was up to date and complete;

f. tortiously directed the Moto Entities' employees to falsely represent to MBL on September 19, 2023, that a data room link provided to MBL supplied all updated operational and financial records and to falsely represent to MBL that the Moto Entities maintained no physical documents at their office;

g. represented to consumers, insurers and other parties that all Manual Payments were to be made to entities owned and controlled by Salter and Ucer, such as Westwood, instead of the Collection Accounts that were required to receive payments under the Credit and Security Agreements;

h. falsely represented to the Moto Entities' employees that they should transfer Manual and Direct Payments into the Moto Entities' accounts instead of transferring such payments into the MBL Collection Accounts;

i. falsely represented to MBL that all payments from consumers or related to collateral were being transferred into the MBL Collection Accounts as required by the Credit Agreement and at the same time provided false, materially misleading and incomplete operational and financial information to MBL and to the Outside Managers to prevent discovery of Salter and Ucer's tortious transfer of Manual and Direct Payments; and

j. directed the Moto Entities' employees to provide materially false, materially incomplete, and misleading financial statements and other

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

documents to MBL on which MBL relied so as to hide Salter and Ucer's scheme to defraud MBL.

13. As set forth more specifically below, MBL, and others to whom Salter and Ucer made false and materially misleading statements and representations, reasonably relied on such statements and representations as intended by Salter and Ucer in order to advance their scheme to defraud MBL so as to use MBL Direct and Manual Payments for the operations of the Moto Entities and other entities owned and/or controlled by Salter and Ucer.

14. Salter and Ucer made numerous misrepresentations to MBL about material facts regarding the operation and finances of the Moto Entities with an intent to deceive MBL at the time such misrepresentations were made.

15. As a result of Salter's and Ucer's false and misleading statements, Salter and Ucer were by their own admissions able to tortiously transfer at least $4.9 million of MBL Collateral to the Moto Entities, while those entities were insolvent and with no ability to repay such transfers to MBL.

16. MBL has demanded that Salter and Ucer repay MBL the full amount of MBL Collateral transferred to the Moto Entities, Westwood, Pico, and M-Nation between June 2022 and August 2024, but Salter and Ucer have refused to make payments to MBL.

## THE PARTIES

17. Plaintiff MBL Administrative Agent II LLC is a Delaware limited liability company with its principal place of business in Stamford, Connecticut. MBL is a Limited Liability Company whose sole member is Post Road Group, LP whose partners are citizens of Connecticut and Bermuda.

18. Defendant Salter is an individual residing in Los Angeles, California and is a citizen of the State of California.

19. Defendant Ucer is an individual residing in Beverly Hills, California, and is a citizen of the State of California.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction under 28 USC § 1332 as Salter and Ucer are citizens of California and MBL is a citizen of Connecticut and Bermuda.

21. This Court has general personal jurisdiction over Ucer because he is a citizen of, and resides in, California.

22. This Court has general personal jurisdiction over Salter because he is a citizen of, and resides in, California.

23. Venue is proper in this Court pursuant to 28 U.S.C. § 1400(a) because Defendants are subject to personal jurisdiction in the Central District of California. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to MBL's claims in this suit occurred in the Central District of California.

## RELEVANT FACTS

***The Credit Agreement***

24. Prior to the Petition Date, the Moto Entities were in the business of financing the sale and lease of motorcycles, ATVs, jet skis, and other recreational vehicles (the "**Moto Vehicles**"), through a network of authorized dealers. The Moto Entities supported consumer lease and lending programs related to the lease or purchase of the Moto Vehicles.

25. The Moto Entities allocated consumer loans and leases into portfolios and sold interests in these portfolios to, or obtained financing for the portfolios from, institutional investors such as MBL. Each portfolio had an associated collection account. The Moto Entities were responsible for collecting any payments consumers made towards loans or leases in a particular portfolio and depositing them in the associated collection account.

26. On or about May 26, 2022, MBL entered into a Senior Secured Revolving Credit Agreement with the Moto Entities (the "**Credit Agreement**").

27. Pursuant to the Credit Agreement, MBL extended credit, on a secured basis, to allow the Moto Entities to acquire leases and inventory as defined in the Credit Agreement.

28. MBL loaned $12,039,842.34 to the Moto Entities pursuant to the Credit Agreement.

29. The Credit Agreement was secured by collateral as defined in the incorporated Security Agreement between Moto SPE and MBL.

30. The Credit Agreement, in conjunction with the concurrently executed Servicing Agreement, required the Moto Entities to hold MBL's money in trust by sending consumer payments to a "Moto SPE Collection Account" and two "SUBI Payment Accounts" (the "**SUBI Payment Accounts**"), (collectively, the "**MBL Collection Accounts**").

31. Article VIII of the Credit Agreement required the Moto Entities to "deposit, or cause to be deposited (without duplication) into the Man Group SUBI Payment Account all Collections[2] and other payments on or in respect of each item of Collateral collected," and further provided that "All amounts on deposit in the Man Group SUBI Payment Account shall be swept weekly to the Collection Account in accordance with the Man Group SUBI Payment Account Control Agreement."

32. In connection with execution of the Credit Agreement, Moto SPE, MBL and East West Bank signed two DACAs. One of the DACAs (the "**Blocking DACA**") protected the SUBI Payments Accounts (the "**Blocked Accounts**") by empowering MBL to administer the accounts and prohibiting Moto SPE from withdrawing money from the Blocked Accounts. The Blocking DACA provided in pertinent part under Section 2.2(iii), that "Borrower does not have a right to make withdrawals or otherwise transact on the accounts," and defined the Borrower as Moto SPE.

33. The Credit Agreement also provided MBL with the unfettered right to transfer servicing of its portfolio from the Moto Entities to a backup servicer.

[2] Capitalized terms are the terms used in the Credit Agreement and incorporated agreements.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

34. Based on the Credit Agreement, MBL believed that Moto Servicing would be responsible for servicing its portfolio. However, unbeknownst to MBL, Salter and Ucer knew and intended that Westwood would be used to process payments from the MBL Collateral, and Salter and Ucer had sole control over the Westwood Collection Account that received collections on MBL's Collateral.

35. At all relevant times, Salter and Ucer directed and controlled all actions of the Moto Entities and the Moto Entities' employees, including the Moto Entities' performance under the Credit Agreement. Salter and Ucer had exclusive control over the Moto Entities' actions, as the Outside Managers had no ability to control or influence the operations of the Moto Entities.

36. As individuals in control of the Moto Entities, Salter and Ucer's actions are imputed to the Moto Entities.

37. As individuals in control of the Moto Entities, Salter and Ucer directed the diverting and concealing of the status of MBL's Collateral, and prevented MBL from discovering the true facts with respect to money owed to MBL for the purpose of inducing MBL's reliance to prevent MBL from exercising its remedies.

***The Falsified DACA***

38. On June 15, 2022, Salter and Ucer initiated their scheme by directing two of Moto Entities' employees, Roz Gamble and Edanna Almero, to send a falsified Deposit Account Control Agreement ("**Falsified DACA**") to East West Bank which allowed Salter and Ucer to access the funds in the Blocked Accounts.

39. The Falsified DACA contained a fake authorization page indicating that two individuals with the email domains "motocyclegroup" were authorized to instruct East West Bank to withdraw funds from the SUBI Payment Accounts.

40. On June 15 or June 16, 2022, an agent of the Moto Entities spoke with an East West Bank representative and claimed the Falsified DACA was an "updated DACA."

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

41. In August and September of 2022, Ucer executed Borrowing Base Certificates on behalf of the Moto Entities, wherein he represented the Moto Entities were compliant in all material respects with the terms and conditions of the Credit Agreement, but failed to disclose the improper transfer of funds out of the Blocked Accounts and the improper transfer of proceeds of MBL Collateral to the Moto Entities.

42. By November 2022, Salter and Ucer had diverted funds that should have been deposited in designated collection accounts of at least $1 million (the "**Converted Funds**") using Westwood and the Falsified DACA, which funds in turn were used to pay the operating expenses of the Moto Entities, Pico, and M-Nation. Despite numerous demands from MBL, Salter and Ucer did not return the Converted Funds.

***Moto Entities' False Representations to Timely Remit Money***

43. The Moto Entities regularly failed to remit money they collected on MBL's behalf to MBL, despite representing on numerous occasions that such money would be remitted to MBL shortly.

44. As early as November 2022, when payments were less than expected, MBL questioned Salter and Ucer about it.

45. Despite Salter and Ucer's transfers of MBL Collateral to other Moto Entites and Pico, Westwood and M-Nation, Salter and Ucer represented to MBL the payments were being made and put into MBL Collection Accounts.

46. MBL regularly asked Salter and Ucer for updates on the status of monthly payments, which Salter and Ucer either ignored or falsely represented to MBL that such payments would be received shortly.

47. Upon information and belief, in addition to failing to timely deposit money into the MBL Collection Accounts and hold such money in trust for MBL, Salter and Ucer directed their employees to withhold financial reporting from MBL, thus preventing MBL from discovering the Moto Entities' insolvency.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

***Salter's and Ucer's Concealment of the Moto Entities' Financial Condition***

48. Section 5.11(e) of the Credit Agreement obligated the Moto Entities to furnish MBL "a report on the performance of each Lease and provide an accounting and reconciliation for all cash receipts and disbursements relating to the Leases," not later than ten calendar days after the end of each calendar month.

49. Notwithstanding the Moto Entities' obligation to provide monthly financial statements, upon information and belief, Salter and Ucer directed the Moto Entities' employees not to provide the requested information to MBL.

50. As of October 2023, the most recent financial statement MBL had from the Moto Entities was for April 2023.

51. Salter and Ucer knowingly, repeatedly, and intentionally misrepresented to, and concealed from, MBL material facts regarding the true financial and operational condition of the Moto Entities and the amount of payments due to MBL.

52. Prior to the Petition Date, the Moto Entities serviced MBL's Collateral by collecting payments thereon from consumers and remitting them to MBL. Article VIII of the Credit Agreement required the Moto Entities to hold the Manual Payments in trust for MBL and manually transfer those payments to MBL within one (1) business day after receipt.

53. On March 20, 2023, Ucer asked Edanna Almero if she could "get [the funds] together to send to [MBL] today," and Ms. Almero informed him that they were "$10k short. We need $255k and we have $245k."

54. On August 14, 2023, Ms. Almero informed Ucer that "We don't have enough to settle with [MBL] today. We only have $70k and we need $171k." Rather than addressing the shortfall in money due to MBL, Ucer told her to instead "fund the 103k roster." Upon information and belief, Ucer was referring to funding of non-MBL obligations with MBL's funds.

55. On August 15, 2023, Ms. Almero asked Ucer how to settle with MBL, because they had "$93k and we need $133k. The wire will fail."

56. Despite Ucer's knowledge that the Moto Entities were insolvent, Ucer regularly represented to MBL that money received on MBL's behalf would be transferred to the MBL Collection Accounts shortly.

57. MBL did not know the Moto Entities were unable to remit funds owed to MBL because Salter and Ucer concealed the fact that the funds held in trust on behalf of MBL were being improperly used for other expenses of the Moto Entities, Pico, and M-Nation.

58. Salter and Ucer also prevented MBL from discovering MBL's financial condition by directing the Moto Entities' employees to not provide full and complete financial information to MBL, such as financial statements and monthly reports relating to the performance of each consumer lease, as required by the Credit Agreement.

59. Meanwhile, Salter and Ucer represented to MBL that all was well, and there were no issues regarding the Moto Entities' operational or financial condition.

60. For example, on June 9, 2023, Ucer left a voicemail for Mike Grosso, a representative of MBL, stating that "everything is going well," and the Moto Entities were "expecting funding to come in on Monday," when in fact Moto SPE was experiencing serious financial problems.

61. On June 15, 2023, Ucer asked Ms. Almero if there was "any change in the frozen accounts as of this morning." Ms. Almero informed him that she could not "process an ACH/wire transaction from the frozen accounts," and that Moto SPE was "currently overdrawn."

***MBL's Inspection of the Moto Entities' Offices***

62. Section 5.04(a) of the Credit Agreement allows MBL to examine all the Moto Entities' or their Affiliates' documents or visit the Moto Entities' or their Affiliates' offices to conduct an inspection upon three days written notice to the Moto Entities.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

63. Section 5.11 of the Credit Agreement required that the Moto Entities "furnish or cause to be furnished to" MBL and the Lenders the following financial information: (1) audited consolidated balance sheets and statements of income, (2) unaudited consolidated balance sheet and statement of income (3) an annual budget or business plan, (4) a monthly report on the performance of each Lease and an accounting and reconciliation for all cash receipts and disbursements relating to the Lease. Section 5.11(d) further required the Moto Entities to "maintain an administrative back office and cash management system that provides for the reporting, financial and accounting services necessary to perform all obligations under this Agreement."

64. On September 19, 2023, Westin Lovy, an agent of MBL, arrived at the Moto Entities' office in Los Angeles to find only Min Zhou, a receptionist in the office.

65. At Salter's and Ucer's direction, Ms. Zhou represented to Mr. Lovy that original hard copy documents are destroyed and no physical documents are retained on site.

66. Per Salter's and Ucer's instructions, Ms. Zhou provided Mr. Lovy with a link to an online document repository. The online document repository included some limited financial information about Moto SPE but was materially incomplete.

***Conversion of MBL's Collateral***

67. Between June 2022 and March 2024, instead of remitting money collected on MBL's behalf and held in trust for the benefit of MBL, Salter and Ucer by their own admissions directed the Moto Entities' employees to transfer at least $4.9 million of MBL Collateral to the Moto Entities, and to companies wholly unrelated to the Credit Agreement and unknown to MBL, such as Westwood, Pico, and M-Nation,which were used to pay operating expenses instead of making payments to MBL.

68. Salter and Ucer conspired to transfer MBL's money that was being held in trust in a manual collections account in Westwood's name, referred to as "WWG EWB-0200" ("**Westwood Account**"), and use it for the corporate expenses of the Moto Entities, Westwood, Pico, and M-Nation.

69. The Credit Agreement required the Moto Entities to transfer all consumer payments collected by the Moto Entities to transfer Manual Payments including the money in the Westwood Account to MBL Collection Accounts within one business day.

70. By December 2023, based on their own records, Salter and Ucer wrongfully caused the Moto Entities to divert more than $4.2 million that should have been deposited into the MBL Collection Accounts and held in trust on MBL's behalf.

71. Ucer also regularly instructed Ms. Almero to use MBL's funds held in trust in the Westwood Account to pay other expenses instead of remitting that money to MBL.

72. On one occasion, on November 23, 2022, Ms. Almero informed Ucer that "We are overdrawn. Need to transfer funds from the manual collections WWG EWB-0200." Ucer approved, stating "Please proceed with it."

73. Similarly, on March 4, 2024, Ms. Almero listed a number of entities and individuals to whom Moto SPE owed money, and asked Ucer if it was "OK to use manual collections to cover these payments?" Mr. Ucer told her, "Yes, please proceed with it."

74. On May 29, 2024, Mr. Ucer told Ms. Almero to "proceed with the funds from the collection account," when she asked how to proceed in making various expense payments.

75. Upon information and belief, there were many other instances where Mr. Ucer directed Ms. Almero to use MBL's funds to cover expenses of the Moto Entities, Pico, and M-Nation.

76. Salter admitted to knowing about and ratifying all the transfers of MBL's funds to other accounts belonging to the Moto Entities.

77. Neither Salter nor Ucer ever informed MBL their employees were using Manual Payments in the Westwood Account for other expenses instead of remitting them to MBL and MBL never authorized such use of its funds.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

78. Salter and Ucer admitted to intentionally diverting MBL's funds, transferring them to Westwood, and using those funds to "keep the lights on" at the Moto Entities, Pico, and M-Nation.

**FIRST CLAIM FOR RELIEF**

**(Fraud against all Defendants)**

79. MBL incorporates paragraphs 1 through 78 by reference as if fully set forth herein.

80. In the course of conducting and participating in the conduct described herein, Salter and Ucer made representations to MBL, which representations were false and necessary to implement the unlawful scheme described above.

81. As set forth above, Salter and Ucer failed to disclose and otherwise concealed facts from MBL, the disclosure of which was necessary to make the representations made by them to MBL not materially misleading. Salter and Ucer knew that said facts were not being disclosed and were material, and they intended by concealment of these facts to facilitate continuation of their unlawful diversion of funds belonging to MBL.

82. The representations and failures to disclose information and suppression of information to have been made by Salter and Ucer herein, were made with the intent to induce MBL to act in a manner herein alleged in reliance thereon.

83. MBL, at the time these representations and failures to disclose information and suppression of information by Salter and Ucer occurred, were ignorant of the falsity of Salter's and Ucer's representations, failures to disclose information and suppression of information, and believed Salter's and Ucer's representations to be true.

84. In reliance on Salter's and Ucer's misrepresentations, failures to disclose information, and suppression of information, MBL did not exercise its contractual remedies, including, but not limited to, imposing the default interest rate, foreclosing on its Collateral, and pursuing the guarantors for damages.

85. Had MBL known the actual facts and not been deceived by Salter and Ucer at the time, it could have exercised those remedies immediately instead of allowing Salter and Ucer an additional nine months to continue to convert MBL's Collateral.

86. MBL relied to its detriment on the representations by Salter and Ucer. Salter and Ucer flagrantly breached the trust and confidence of MBL by committing numerous acts of fraud, deceit, and conversion alleged herein, through which they plundered the funds of MBL.

87. MBL's reliance on Salter's and Ucer's representations was justified based on Salter's and Ucer's apparent expertise and experience, and their superior knowledge with respect to the financial condition of the Moto Entities and the collections of MBL's funds. Only Salter and Ucer knew this information, which they actively concealed from MBL.

88. In the course of developing their elaborate scheme to defraud, Salter and Ucer unlawfully, willfully and knowingly did combine, conspire, and agree together, with each other, to facilitate, aid and abet, and conceal the scheme to defraud, and to obtain money and property by false representations, thereby enabling the massive diversions and concealment of MBL's funds identified in this Complaint.

89. As a direct and proximate result of the foregoing fraudulent conduct and conspiracy to defraud, MBL has suffered damages in an amount to be determined at trial, and presently estimated to be not less than $16 million.

90. In committing the acts and perpetrating the schemes alleged herein, Salter and Ucer intended to injure MBL and acted with malice, oppression, and a willful and conscious disregard for the rights of MBL. In so doing, Defendants acted toward MBL in such manner as to warrant an award of punitive and exemplary damages.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

## SECOND CLAIM FOR RELIEF

**(Conversion against all Defendants)**

91. MBL incorporates paragraphs 1 through 90 by reference as if fully set forth herein.

92. Salter and Ucer wrongfully converted MBL's funds by (1) directing the Moto Entities' employees to not deposit MBL's funds into the MBL Collection Accounts, and instead, directing the use of MBL's funds for other expenses of the Moto Entities and expenses for Salter and Ucer's non-Moto companies such as Pico and M-Nation; and (2) using a fake authorization page at East West Bank to access and divert MBL's funds from restricted accounts to their possession or to the possession of entities they own and/or control.

93. Such conversions have been to the detriment of the MBL. Such acts of conversion include the acts alleged herein.

94. Salter and Ucer unlawfully, willfully, and knowingly did combine, conspire, and agree together, with each other, and with others to convert money, funds, and property belonging to MBL to their own use. In furtherance of the conspiracy and to affect the objects thereof, Salter and Ucer committed the overt acts, among others, referenced above.

95. Salter and Ucer converted money, funds, and property belonging to MBL without the consent of MBL. Because MBL had no knowledge of who received the funds, or the existence of a fake authorization page allowing Salter and Ucer to access the restricted accounts, MBL could not have authorized Salter and Ucer to obtain control over said funds.

96. As a direct and proximate result of these acts of conversion by Salter and Ucer, MBL has suffered damages in an amount to be determined at trial, and presently estimated to be not less than $4.9 million.

97. In committing the acts and perpetrating the schemes alleged herein, Salter and Ucer intended to injure MBL and acted with malice and oppression and with a

willful and conscious disregard for the rights of MBL. In so doing, Salter and Ucer acted toward MBL in such manner as to warrant an award of punitive and exemplary damages.

**THIRD CLAIM FOR RELIEF**

**(Aiding and Abetting Fraudulent Transfer against all Defendants)**

98. MBL incorporates paragraphs 1 through 97 by reference as if fully set forth herein.

99. Salter and Ucer provided substantial assistance to the Moto Entities in order to hinder, delay, and defraud the Moto Entities' creditors, including MBL, by knowingly and intentionally orchestrating and controlling the strategy to divert, convert, and conceal MBL's assets.

100. Salter and Ucer concocted the entire scheme to hinder, delay, and defraud the Moto Entities' creditors, particularly MBL, by directing the diversion of MBL's funds from the MBL Collection Accounts, and concealing the location of those funds from MBL, thereby making it exceedingly difficult for MBL to recover said funds.

101. Salter and Ucer created, and directed the Moto Entities' employees to submit, a fake authorization page to East West Bank allowing the Moto Entities to access restricted accounts and obtain control over MBL's funds.

102. Ucer regularly directed the Moto Entities' employees to transfer money collected on MBL's behalf from the MBL Collection Accounts to himself, Salter, and entities owned and controlled by him and Salter. Salter approved and ratified said transfers.

103. Salter and Ucer concealed the fraudulent transfers by directing the Moto Entities' employees to withhold financial reporting from MBL, destroy physical documents, and falsely represent to MBL that no physical documents were kept on-site at the Moto Entities' offices.

104. Salter and Ucer knew that the transfers were fraudulent because they knew the Moto Entities agreed not to access the restricted accounts, the money in the MBL

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

Collection Accounts belonged to MBL, and MBL did not authorize the transfer of its funds to either Ucer, Salter, or any entities owned and/or controlled by them.

105. Ucer's and Salter's assistance was a substantial factor in causing the transfers of MBL's funds because Salter and Ucer (1) devised the scheme, (2) personally directed the diversion of the funds, (3) had exclusive control over the Moto Entities' actions at all relevant times, (4) directed the Moto Entities' employees to submit a Falsified DACA to East West Bank, thereby allowing Salter and Ucer to access MBL's funds in the Blocked Accounts, and (5) directed the Moto Entities to divert Manual Payments other than to the Collection Accounts.

106. Salter and Ucer intentionally diverted MBL's funds to "keep the lights on" at the Moto Entities and other entities owned and controlled by Salter and Ucer, and acted with oppression, fraud, and/or malice, thereby entitling MBL to an award of punitive damages.

**<u>FOURTH CLAIM FOR RELIEF</u>**

**(Civil Conspiracy to Commit Fraud against all Defendants)**

107. MBL incorporates paragraphs 1 through 106 by reference as if fully set forth herein.

108. Salter and Ucer formulated a common plan to commit fraud against MBL, as described herein.

109. The object of Ucer's and Salter's conspiracy was to defraud MBL by diverting MBL's money, funds, and property to further their fraudulent activities and enrich themselves, and concealing the Moto Entities' financial condition from MBL so as to delay and prevent MBL from recovering the Collateral and exercising remedies available to it under the Credit Agreement.

110. By their actions, Salter and Ucer intended to, and did in fact, wrongfully transfer funds to which MBL has a legitimate claim.

111. Salter and Ucer knew that each co-conspirator planned to commit the fraud upon MBL and demonstrated their agreement and intention to perpetrate a fraud

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

by virtue of their knowledge that (1) the money, funds, and property they directed the Moto Entities' employees to divert belonged to MBL; (2) the Moto Entities agreed to hold funds in trust on MBL's behalf; (3) MBL never authorized the transfer or use of its money, funds, and property; (4) material facts about the Moto Entities' financial condition were being misrepresented and/or concealed from MBL; (5) consumers were making Manual and Direct payments to non-Moto Entities, such as Westwood, in violation of the requirements of the Credit and Security Agreements; (6) the Moto Entities' employees sent a Falsified DACA to East West Bank, thereby allowing Salter and Ucer to access and withdraw MBL's funds from the Blocked Accounts; and (7) the Moto Entities were directed to divert Manual Payments other than to the Collection Accounts.

112. MBL has been damaged as a result of Ucer's and Salter's actions in an amount to be proven at trial.

113. Salter and Ucer intentionally diverted MBL's funds to "keep the lights on" at the Moto Entities and other entities owned and controlled by Salter and Ucer and acted with oppression, fraud, and/or malice, thereby entitling MBL to an award of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For compensatory damages;
2. For punitive damages;
3. For prejudgment interest;
4. For all costs and fees incurred in prosecuting this Complaint; and
5. For such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Civil L.R. 38-1, Plaintiff hereby demands a trial by jury.

DATED: March 12, 2025

HOLLAND & KNIGHT LLP

By: */s/ Andrew M. Cummings*
Robert J. Labate
Andrew M. Cummings
Ana Dragojevic
Attorneys for Plaintiff

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450